# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROY OWENS AND MARY HELEN OWENS, | Case No. |
| Plaintiffs, | **COMPLAINT**<br>**Jury Trial Demanded** |
| vs. | |
| JAYCO, INC. AND LIPPERT COMPONENTS, INC., | |
| Defendants. | |

## NATURE OF ACTION

1.      Plaintiffs Roy Owens ("Mr. Owens") and Mary Helen Owens ("Ms. Owens") (collectively, "Plaintiffs") bring this action against Defendant Jayco, Inc. ("Jayco") and Lippert Components, Inc. ("Lippert") under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and state law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 2310(d) as the amount in controversy in this action exceeds fifty thousand dollars ($50,000.00).

3.      The Amount in Controversy in this matter exceeds $50,000 because the purchase price of the recreational vehicle at issue is $103,029.02. Moreover, all collateral charges incurred in Plaintiffs' acquisition and possession of the recreational vehicle, diminished value of the recreational vehicle, and incidental and consequential damages,

including but not limited to cover, loss of use, aggravation and inconvenience, are themselves averred to exceed fifty thousand dollars.

4.      Supplemental jurisdiction also exists pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper before this Court, where the acts and transactions giving rise to Plaintiffs' action occurred in this district, and where Defendants transact business in this district.

## PARTIES

6.      Plaintiffs are natural persons who purchased a consumer product primarily for personal purposes.

7.      Plaintiffs are "consumers" as defined by 15 U.S.C. § 2301(3).

8.      Jayco is a corporation authorized to do and doing business in the State of Pennsylvania and is engaged in the manufacture, assembly, integration, sale, supply and distribution of recreational vehicles and related equipment and services.

9.      Jayco supplies its products under its own brand name and provides services to the public at large through a system of authorized sales and repair/service centers.

10.     Jayco is a "warrantor" as defined by 15 U.S.C. § 2301(5).

11.     Lippert is a corporation authorized to do and doing business in the State of Pennsylvania and is engaged in the manufacture and assembly of slideout systems which Jayco uses in its recreational vehicles.

12.     Lippert supplies its products under its own brand name and provides services to the public at large through a system of RV manufacturers like Jayco.

13.     Lippert is a "warrantor" as defined by 15 U.S.C. § 2301(5).

## FACTUAL ALLEGATIONS

### A.     THE TRANSACTION

14.     On or about April 4, 2018, Plaintiffs purchased a 2017 Jayco Precept 35S VIN 1F66F5DY8GOA15509 (the "RV") from Fretz Enterprises, Inc. ("Fretz") in Souderton, Pennsylvania.

15.     The RV was purchased primarily for Plaintiffs' personal use.

16.     The RV is a "consumer product" as defined by 15 U.S.C. § 2301(1)

17.     The sales contract was presented to Plaintiffs at Fretz and executed at the Fretz.

18.     At all times during the transaction, Fretz's personnel held themselves out to be acting on behalf of Jayco, as well as Fretz.

19.     The sales price of the RV was $103,029.02, excluding finance charges.

20.     Plaintiffs received a trade-in allowance of $14,600.

21.     In connection with the financing of the RV, PlaintiffS executed a retail installment sales contract with Fretz, which was later assigned to Bank of America.

22.     A true and correct copy of the retail installment sales contract is attached to this complaint as Exhibit A.

## B.    ACTIONABLE CONDUCT

23.    Since Plaintiffs took possession of the RV, they have experienced various defects and non-conformities in the RV that diminish its value and/or substantially impair its use and value to Plaintiffs.

24.    When Plaintiffs purchased the RV on April 4, 2018, Fretz advised Plaintiffs that because the RV was a "leftover" unit and had been on their lot for quite some time, Fretz needed a week to clean and prepare the unit for delivery.

25.    Plaintiffs agreed to pick up the RV on April 11, 2018 at 11am.

26.    On April 11, 2018, when Plaintiffs went to pick up the RV, they discovered that the RV was not ready for delivery as Fretz was in the process of replacing the bedroom TV because it did not work.

27.    Plaintiffs also discovered that the pedestal table between the driver and passenger seats was missing.

28.    Fretz could not explain why the table was no longer there and merely provided Plaintiffs with a replacement pedestal table that did not even fit.

29.    Jayco eventually sent Plaintiffs the correct pedestal table about two weeks later that Plaintiffs had to install themselves.

30.    On or about June 12, 2018, Plaintiffs tendered the RV to Fretz, one of Jayco's authorized warranty service dealers, for repair of defective conditions including, but not limited to a lack of hot water coming from the shower.

4

31.     Plaintiffs were unable to use the RV for four days while Fretz attempted to repair the above issue under the written warranty issued by Jayco.

32.     On or about July 28, 2018, Plaintiff tendered the RV to Fretz for repair of defective conditions including, but not limited to:

> 1) defective slide-outs, as evidenced by operating difficulties and damage to the RV when being extended;
> 3) buckling floor in front of the refrigerator area;
> 4) soft spots in the floor of the living room area;
> 5) shower door not staying shut during travel;
> 6) left turn signal camera not working;
> 7) refrigerator not cooling;
> 8) no sound coming from backup camera;
> 9) upholstery tear in the back of the sofa and left arm rest;
> 10) loose molding strips at the top entrance step; and
> 11) Any other complaints actually made, independent of whether they appear on Jayco's authorized repair facility invoice.

33.     On or about August 10, 2018, Fretz's service manager, Bob Bodkin, informed Plaintiffs that the soft spots in the floors were the result of extensive water leaks from the slides that had also caused damage to the interior walls.

34.     Mr. Bodkin advised Plaintiffs that he would send the information concerning the repairs to Jayco but that the repairs could take two months.

35.     On or about August 31, 2018, Fretz's service writer, Jamie Custer, informed Plaintiffs that Fretz was still waiting for Jayco to authorize the repairs but because its repair facility was not equipped to handle the extensive repairs to the RV's floor and walls, Fretz would likely have to send the RV to Jayco's factory for repair.

36.     On or about September 5, 2018, Plaintiffs contacted Mr. Bodkin for a status update and were informed that Fretz was still waiting to hear back from Jayco.

37.     When Plaintiffs expressed their frustration with the slow response time from Jayco, Mr. Bodkin advised that they contact Jayco directly to try and speed up the process.

38.     Between September 6, 2018 and September 11, 2018, Plaintiffs spoke with Jayco's representative "Matt" on several occasions about the status of the repair authorization.

39.     During one conversation, Matt disclosed to Plaintiffs that shortly after Plaintiffs purchased the RV, Fretz had submitted a warranty claim for a leak on the roof which was authorized and repaired during the first two weeks that Fretz had possession of the RV.

40.     Plaintiffs advised Matt that Fretz had not disclosed the warranty roof repairs to them and that this was the first time Plaintiffs were hearing about such repairs.

41.     On or about September 20, 2018, almost two months after Plaintiffs had tendered the RV to Fretz for repair, Jayco finally authorized Fretz to ship the RV to Jayco's factory for repair.

42.     However, Ms. Custer informed Plaintiffs that May 2019 was the earliest Jayco could take the RV in for repairs at the factory.

43.     Plaintiffs have been unable to use the RV since July 28, 2018.

44.     The RV still has material defects and non-conformities as of the date of this complaint.

45.     Plaintiffs provided Jayco, through its authorized repair network and itself, a reasonable opportunity to repair the defects, non-conformities and conditions within the RV and its components.

46.     Despite being given a reasonable amount of time to cure the RV's defects, non-conformities and conditions, Jayco failed to do so.

47.     Jayco's warranty therefore failed of its essential purpose.

48.     Jayco's failure to correct said defects violates its statutory and common law duties to Plaintiffs and the expectations created in its promotional documents and written warranty documents.

49.     Plaintiffs provided Lippert, through its authorized repair network, a reasonable opportunity to repair the defects, non-conformities and conditions of the RV's slideout system.

50.     Despite being given a reasonable amount of time to cure the RV's slideout system defects, non-conformities and conditions, Lippert failed to do so.

51.     Lippert's warranty therefore failed of its essential purpose.

52.     As a result, the RV's slideout system cannot be utilized as intended by Plaintiffs at the time of purchase and the use and value of the RV has been diminished and/or substantially impaired to Plaintiffs.

53.     Plaintiffs relied on representations regarding the length and duration of Jayco's warranty when deciding to purchase the RV, as well as statements and/or representations of general policy concerning customer satisfaction when deciding to purchase the RV.

54.     Plaintiffs have been and will continue to be financially damaged due to Defendants' conduct or inaction as described herein.

55.     Upon information and belief, both the slideouts and/or the system (the "Components") themselves are defective, Jayco's integration of the Components is defective, or both the Components and Jayco's integration are defective.

56.     In other words, Lippert may have breached its written and implied warranties through the faulty manufacture of the Components, Jayco may have breached its written and implied warranties through faulty integration of the Components, or Lippert and Jayco are both to blame and are in breach of their written and implied warranties.

57.     However, if the defect solely remains with the Components themselves, Jayco may bear no liability because its written warranty may only cover substantial defects in materials, components, or parts of the RV Jayco says are attributable to it, and allegedly does not replace, modify, or apply to the warranties provided by the manufacturers that supply the products used to assemble the RV, i.e. the Components.

58.     Therefore, Jayco has a motivation to illustrate during Plaintiff's instant lawsuit why Lippert's faulty manufacture of the Components are to blame.

59.    Similarly, if the defect solely remains with Jayco's fault integration of the Components, Lippert may bear no liability because its written warranties may only cover its Components.

60.    Therefore, Lippert has a motivation to illustrate during Plaintiff's instant lawsuit why Jayco's faulty integration of its Components is to blame.

61.    However, it is often difficult for consumers—such as Plaintiff—to determine the root cause(s) of a defect(s) in a recreational vehicle as there may be multiple causes that are attributable to such defect(s).

62.    This is because, upon information and belief, manufacturers—such as Defendants—do not disclose the schematics of how their respective products are properly integrated with the other, thus giving them the unfair advantage of easily determining the root cause(s) of a defect(s) in a recreational vehicle.

63.    Upon information and belief, manufacturers further enjoy an unfair advantage in determining the root cause(s) of a defect(s) due to their exclusive access to resources such as confidential documents, trade secrets, and industry association agreements and private industry arbitrations wherein manufacturers—such as Defendants—can surreptitiously determine and/or reapportion liability between themselves and seek other compensation directly related to consumer disputes, such as Plaintiff's instant lawsuit.

64.     For example, upon information and belief, if this Court determines that Defendants are at fault and apportion each liable for 50% of Plaintiffs' damages, either Defendant may invoke private and confidential industry arbitration if they disagree with this Court's allocation of damages.

65.     Furthermore, upon information and belief, if either Defendant invokes arbitration and the industry arbitrator finds one Defendant to actually be 70% liable for Plaintiffs' damages and the other Defendant only 30% liable, the Defendant found to be 30% liable will be reimbursed by the other Defendant for the 20% difference between the Court's allocation of liability and the industry arbitrator's allocation of liability.

66.     Upon information and belief, Defendants are able to avail themselves of this private and confidential industry arbitration *during* the pendency Plaintiffs' instant lawsuit.

67.     Thus, the ability to determine and/or reapportion liability between themselves and seek other compensation from each other in a private arbitration motivates manufacturers—such as Defendants—to unfairly strategize and collude to a consumer's detriment.

68.     Simply put, long term business partners—such as Defendants—that operate in the tight-knit recreational vehicle industry have no motivation to publicly point fingers at one another over the root cause(s) for a defect(s) in a consumer's recreational vehicle, and are better served strategizing and colluding with each other to defeat a consumer's

dispute as they are able to privately resolve their internal disputes at another time or even simultaneously during the pendency of a consumer's dispute.

69.     Plaintiffs have met all obligations and preconditions as provided in Defendants' warranties and by statute(s).

70.     As a direct and proximate result of Defendants' failure to comply with their statutory written warranties, statutory obligations, and common law duties, Plaintiffs have suffered damages and under 15 U.S.C. § 2310(d), Plaintiffs are entitled to bring suit for damages and other legal and equitable relief.

**COUNT I**
**BREACH OF WRITTEN WARRANTY PURSUANT TO MAGNUSON-MOSS**
**WARRANTY ACT**
**JAYCO**

71.     Plaintiffs repeat and re-allege each and every paragraph above.

72.     Plaintiffs' purchase of the RV was accompanied by the written warranty offered by Jayco and extending to Plaintiffs.

73.     The written warranty covered repairs or replacements during the warranty period, the lesser of two years or 24,000 miles, due to defects in factory materials or workmanship.

74.     The written warranty is a "written warranty" as defined by 15 U.S.C. § 2301(6).

75.     Jayco breached its written warranty by failing to seasonably cure the RV's defects and non-conformities after being given an opportunity to do so.

11

76.    Jayco's actions herein constitute a breach of its written warranty.

77.    Jayco's actions herein constitute a violation of the MMWA.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

    a)  Adjudging that Jayco breached its written warranty;

    b)  Awarding the return of all monies paid toward the RV;

    c)  Awarding diminution in value damages;

    d)  Awarding incidental and consequential damages;

    e)  Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action;

    f)  Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law;

    g)  Awarding such other and further relief as the Court may deem just and proper.

## COUNT II
## BREACH OF IMPLIED WARRANTY PURSUANT TO MAGNUSON-MOSS WARRANTY ACT
## JAYCO

78.    Plaintiffs repeat and re-allege each factual allegation contained above.

79.    Because Jayco issued Plaintiffs a written warranty as defined by 15 U.S.C. § 2301(6), Jayco was prohibited from disclaiming any implied warranties arising under state law.

80.     When it supplied the RV to Plaintiffs, Jayco impliedly warranted that the RV was fit for its intended use and ordinary use.

81.     Because the RV had material defects and non-conformities, and was not fit for its intended use, Jayco breached its implied warranty to Plaintiffs.

82.     Jayco's actions herein constitute a breach of its implied warranty.

83.     Jayco's actions herein constitute a violation of the MMWA.

WHEREFORE, pursuant to 15 U.S.C. § 2310(d), Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that Jayco breached its implied warranty;

b) Awarding the return of all monies paid toward the RV;

c) Awarding diminution in value damages;

d) Awarding incidental and consequential damages;

e) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

f) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

g) Awarding such other and further relief as the Court may deem just and proper.

**COUNT III**
**REVOCATION OF ACCEPTANCE PURSUANT TO MAGNUSON-MOSS**
**WARRANTY ACT**
**JAYCO**

84.     Plaintiffs repeat and re-allege each factual allegation contained above.

85.     Jayco's tender of the RV was substantially impaired to Plaintiffs due to the RV's defects and non-conformities.

86.     Plaintiffs accepted the RV on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured and/or without discovery of such nonconformity wherein Plaintiffs' acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the assurances any non-conformities would be cured.

87.     Plaintiffs' revocation of acceptance occurred within a reasonable time after discovering the grounds for revocation and before any substantial change in condition of the RV which is not caused by its own defects.

88.     Plaintiffs have notified Jayco of the revocation.

WHEREFORE, pursuant to 15 U.S.C. § 2310(d), Plaintiffs pray for relief and judgment, as follows:

a)  Allowing Plaintiffs to revoke acceptance of the RV;

b)  Awarding the return of all monies paid toward the RV;

c)  Awarding incidental and consequential damages;

14

d)  Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

e)  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

f)  Awarding such other and further relief as the Court may deem just and proper.

**COUNT IV**
**BREACH OF WRITTEN WARRANTY PURSUANT TO MAGNUSON-MOSS**
**WARRANTY ACT**
**LIPPERT**

89.   Plaintiffs repeat and re-allege each and every paragraph above.

90.   Plaintiffs' purchase of the RV was accompanied by the written warranty offered by Lippert and extending to Plaintiffs.

91.   Lippert provided a written warranty that was in effect at all relevant times, for its slideout system due to defects in factory materials or workmanship.

92.   The written warranty is a "written warranty" as defined by 15 U.S.C. § 2301(6).

93.   Lippert breached its written warranty by failing to seasonably cure the RV's slideout system defects and non-conformities after being given an opportunity to do so.

94.   Lippert's actions herein constitute a breach of its written warranty.

95.   Lippert's actions herein constitute a violation of the MMWA.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Adjudging that Lippert breached its written warranty;

b)  Awarding the return of all monies paid toward the RV;

c)  Awarding diminution in value damages;

d)  Awarding incidental and consequential damages;

e)  Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action;

f)  Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law;

g)  Awarding such other and further relief as the Court may deem just and proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY PURSUANT TO MAGNUSON-MOSS WARRANTY ACT
## LIPPERT

96.     Plaintiffs repeat and re-allege each factual allegation contained above.

97.     Because Lippert issued Plaintiffs a written warranty as defined by 15 U.S.C. § 2301(6), Lippert was prohibited from disclaiming any implied warranties arising under state law.

98.     When it supplied the RV slideout system to Plaintiffs, Lippert impliedly warranted that the slideout system was fit for its intended use and ordinary use.

99.     Because the RV's slideout system had material defects and non-conformities, and was not fit for its intended use, Lippert breached its implied warranty to Plaintiffs.

100.    Lippert's actions herein constitute a breach of its implied warranty.

101.    Lippert's actions herein constitute a violation of the MMWA.

WHEREFORE, pursuant to 15 U.S.C. § 2310(d), Plaintiffs pray for relief and judgment, as follows:

    a)  Adjudging that Lippert breached its implied warranty;

    b)  Awarding the return of all monies paid toward the RV;

    c)  Awarding diminution in value damages;

    d)  Awarding incidental and consequential damages;

    e)  Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

    f)  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

    g)  Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

102.    Plaintiff is entitled to and hereby demands a trial by jury.

Dated: April 15, 2019.

Sharon S. Masters
Pennsylvania Bar No. 50360
2201 Pennsylvania Ave.
Pennsylvania, PA 19103
Telephone: (610) 332-5277
Facsimile: (866) 317-2674

17

shmasters@hotmail.com
Counsel for Plaintiff

Co-counsel with Thompson Consumer Law Group, PLLC

Correspondence address:
5235 E. Southern Ave. D106-618
Mesa, AZ 85206